### JAMES ASHWORTH v. THE STATE.

*No. 31.  Decided January 11.*

1. **Robbery.**—See the opinion for a state of facts which were held amply sufficient to support a judgment of conviction for robbery, though defendant was not actually present at the time the goods were taken, it being clearly shown that the goods were delivered because of the fear operating on the mind of the owner at the time of the delivery, and that this fear was superinduced by the acts, conduct, and threats of defendant, and that the goods were received by those acting with him, in accordance with the original design of these parties and defendant.

2. **Same — Defense of Coercion.** — See the opinion for a state of facts upon which it was *held*, that defendant's contention and plea that he was coerced and compelled to do what he did in connection with the robbery, by coercion and fear of his life from a band of robbers, whose prisoner he claimed to be, was under proper instructions from the court correctly decided by the jury against him.

APPEAL from the District Court of Duval. Tried below before Hon. A. L. McLAINE.

This appeal is from a judgment of conviction for robbery, the punishment being assessed at fourteen years in the penitentiary. The facts are sufficiently stated in the opinion.

There are no bills of exceptions, and no special instructions asked by defendant shown in the record.

Upon the issue of coercion, the judge charged the jury as follows: "If from the evidence you believe that the defendant took the property described in the indictment, and under such circumstances as to constitute robbery, * * * but you further believe that the defendant was acting under duress or coercion, and through fear of others, who were acting together with him, then you will acquit him."

No brief for appellant has come to the hands of the Reporter.

*R. L. Henry*, Assistant Attorney-General, for the State.

DAVIDSON, Judge——Appellant, having been convicted of robbery, prosecutes this appeal.

By the injured party the State Proved that the defendant and one of his confederates visited his store, heavily armed, and demanded various articles of his property. While there, defendant took from his pocket a paper, and showing it, said to the witness, "A lot of my companions intended to make an assault on you, but some of my companions, who are not bad friends of yours, opposed it, saying that on account of your family they did not want to do it," and handed him the paper, which was signed " J. F., of the Revolution," " and said that I had better give him the goods he wanted or he and his companions would assault me. I told defendant I did not recognize the order, and did not and would not have dealings with that sort of people. Defendant again said he and his companions had consulted about getting the goods from me, and some wanted to assault me, and others did not, and that I had better let them have the goods. I then asked defendant how much goods would satisfy him and his companions, because I wanted to get off as light as possible, and I asked him if he would be satisfied with $10 worth. Defendant wrote out a list of articles, asking me the price after he had put down on this memorandum a good many articles. I said, ' You have gotten down more than $10 worth;' and he said, ' You can take off some of the sugar and coffee.' Defendant then said he would go and see whether his companions would be satisfied with the $10· worth, and told me to fix up the parcels and have them ready for him. Defendant and his companion then left."

During the time defendant was at the store he was armed with a carbine and pistol, and held the carbine in his hand all the while. During their stay at the store his companion was marching to and fro in front of the door with his gun " at ' a carry arms' position, like a sentinel." " In about eight minutes " after their departure, the former companion of defendant, accompanied by another confederate, returned and carried away the goods demanded by defendant. Defendant did not return to the store. This witness further stated that he " gave up the goods because the defendant put me in fear of my life, and I was afraid they would assassinate me." A brother of the witness gave substantially the same testimony. Defendant testified also to the same facts, and, as to taking the goods, " said he was compelled to do so by Julian Florez and his band of followers." " They made me do it. They told me they would hang me if I did not do it. They caught me at Charamusea ranch, and said I was a spy, and kept me with them about a month. I could not get

away from them. They watched me all the time, and had guards put around our camp at night.''

On cross-examination, it was elicted from him that he and his two confederates rode up to a point about a quarter of a mile distant from the store. One of them remained at this place, while defendant and the other went to the store. Upon their return to this companion, defendant remained alone while the other two went to the store, secured the goods, rejoined defendant, and together the three returned to Florez and his band of followers, who were in waiting about three miles distant. He further stated that he was coerced by Florez and his band in this matter, and committed the robbery through fear of his life, and that his two companions accompanied him for the purpose of preventing his escape.

It is contended, that under this state of the case the defendant was not guilty, inasmuch as he was coerced into committing the robbery. The question was submitted to the jury, under appropriate instructions, and decided adversely to defendant, and we think correctly so. Nor can we agree with contention of counsel, that the evidence is insufficient to support the conviction. It is shown by defendant himself that he and his two attendant confederates left the camp of his nonattending confederates, the revolutionist Florez and his band of thirty, for the specific purpose of committing the identical robbery afterward perpetrated by them. They proceeded to the place specified, procured from the designated party, by putting him in fear of his life, the property desired, and conveyed it to the camp of their leader.

That defendant was at a short distance from the store at the very moment the property was taken, and not actually present at the scene of the robbery, does not relieve him of the consequences of the crime; nor was it essential to his conviction that the goods should have been delivered at the time of his demand. It is sufficient if the cause produced by defendant inducing the delivery of the goods was operative upon the mind of the injured party at the time of such delivery, it being shown that defendant had not abandoned the enterprise, and was still acting with his coconspirators. This would constitute robbery as much in defendant as in those who were actually engaged in the taking; and this would be equally true if the goods were delivered because of the prosecutor's fear of life, produced by the previous acts of defendants, where those receiving the goods were believed to be confederates of defendant. ''If thieves come to rob A, and finding little upon him, force him by menace to swear to bring them a greater sum, which he does accordingly, this is robbery, if at the time he delivered the money the fear of the menace continued to operate upon him.'' 1 Whart. Crim. Law, sec. 856; 1 Hale, P. C., 532.

It was clearly shown that defendant was a principal in the transaction; that the goods were delivered because of the fear operating upon the mind of the owner at the time of the delivery, and superinduced by the acts,

·conduct, and threats of defendant, and were received by those acting with him, in accordance with the original design. The charge is criticised in various respects, but we do not concur in these criticisms. We think the charge fairly presents the law of the case. The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.